# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

SHANA WILGAR,

    Plaintiff,

v.

OPM LAS VEGAS CORPORATION *doing business as Oishi's Property Management* JEANNE KANEDA,

    Defendant(s).

Case No. 2:19-cv-1036-RFB-EJY

**ORDER**

## I. INTRODUCTION

Before the Court are Defendants' Special Motion to Dismiss Pursuant to NRS 41.660 and Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6). ECF Nos. 11, 12. For the following reasons, the Court denies Defendants' Special Motion to Dismiss Pursuant to NRS 41.660 and denies in part and grants in part Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

## II. PROCEDURAL BACKGROUND

Plaintiff Shana Wilgar filed the original complaint in the Eighth Judicial District of the State of Nevada in Clark County, Nevada on May 28, 2019. ECF No. 1. Defendants removed the case to federal court on June 17, 2019. Id. Plaintiff filed an amended complaint on July 12, 2019. ECF No. 6. Defendants moved to dismiss pursuant to NRS 41.660 on July 25, 2019. ECF No. 11

A response and reply were filed. ECF No. 15, 17. The response was also designated a motion to amend. Defendants also moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ECF No. 12. A response and reply were also filed ECF Nos. 14, 18.

### III. FACTUAL ALLEGATIONS

Plaintiff alleges as follows in her complaint:

On January 14, 2014, Plaintiff Shana Wilgar was hired by OPM Las Vegas as a property manager. As a property manager, her duties and responsibilities included communicating with owners and tenants, putting in work orders, coordinating repair work, and completing necessary paperwork concerning the various properties. Wilgar was initially trained in her duties and responsibilities by Sheri Meir, who is no longer an employee at OPM Las Vegas. OPM Las Vegas has a written policy that allows OPM Las Vegas to dock an employee's pay if that employee is summoned to jury duty and must miss work, in violation of the Nevada Revised Statutes.

Even though OPM Las Vegas policy states that employees are encouraged to "fulfill their civic duty," it also states that "employees shall receive 50% of pay for up to 5 days of jury duty only." When Wilgar ended up getting jury duty, Defendant Lawrence Oishi ("Oishi"), the president of OPM Las Vegas, pressed Wilgar to try and get out of it. When Wilgar ended up being put on the jury, her pay was docked for the time that she was away.

For the first 3-4 years of Wilgar's tenure with OPM Las Vegas, she had sole responsibility for the "emergency line." The "emergency line" is a mechanism for tenants or owners to get in contact with someone twenty-four hours a day, seven days a week, fifty-two weeks a year if any emergency occurs at one of the properties.

During the years that Wilgar had exclusive responsibility for the "emergency line" she would receive calls at all hours of the day, night, weekend, holidays, and while she was on

vacation. She was expected to answer the "emergency line" and deal with whatever emergency came up regardless of when the call came in and regardless of how much time it took the rectify the situation.

The vacation days during which she was responsible for the "emergency line" were not recouped or recovered. When Wilgar was hired, both Wilgar and OPM Las Vegas expected that Wilgar would work forty hours a week. OPM Las Vegas stated in writing that she was hired to work forty hours a week. Rarely, if ever, did Wilgar work only forty hours a week.

It was typical that Wilgar would work at least fifty hours a week, including working after hours, on weekends, holidays, and while she was on vacation. Despite Wilgar's efforts and work on Defendants' behalf, Wilgar was only compensated for forty hours of work per week.

Regularly, if Wilgar left work early, regardless of the reason, she would be docked for a half-day's work or four hours, even if she was not missing four hours of scheduled work. Wilgar would thus regularly work more hours than she was compensated for.

Oishi would regularly require that all employees, including Wilgar, attend a mandatory staff lunchtime meeting. This meeting occurred every Monday and daily whenever Oishi was in Las Vegas, Nevada. On those days, employees would not get the statutorily required minimum of thirty minutes for a meal break pursuant to NRS Chapter 608.

Wilgar's position was not covered by any exemption to overtime pay as codified in NRS Chapter 608 and the FLSA, 29 U.S.C.A. 201 *et seq.* Wilgar sent a demand letter to Defendants' counsel in compliance with NRS 608.140 before instituting this action. The demand was rejected.

During her period of employment from January 2014 through January 2019, Wilgar and other female employees were subjected to, on practically a daily basis, the following conduct:

Oishi stated to a receptionist, in front of Wilgar, "Did you wear those pants for me? I like your butt in them." Oishi stated to a receptionist, in front of Wilgar, when she wore skirts, "I like your legs," and "look at those shoes, how sexy." Oishi stated to a receptionist, in front of Wilgar, after the receptionist had a fire at her home, "I have a special room for you at my house." Oishi made statements to the receptionist, in front of Wilgar, about her teenage daughter, such as "I like her body," and "Like mother like daughter." Oishi would comment to Wilgar and other employees that men who were punished for sexual harassment "should have been more careful."

Oishi stated in a mandatory staff lunch meeting, when several staff members, including his own daughter, commented that he should stop his sexual comments, "I better be careful with this 'me too' stuff, you never know these days who may say something" and "I guess I better tone it down." Oishi would typically and frequently yell at and berate Wilgar in the presence of her coworkers.

Oishi told a receptionist that she should sit across from him during the mandatory staff lunch so that he could 'watch [her] put things in [her] mouth." Oishi told female employees, including Wilgar, during multiple staff meetings that "trained monkeys are smarter than you" and "women are too emotional." Oishi told female employees, including Wilgar, that robots could do their jobs.

Oishi told female employees, including Wilgar, that Chris Srivastava, a male employee, "can come and go as he pleases because he is more valuable, and the rules don't apply to him. If you don't like it, there's the door." Oishi told Wilgar, when she scheduled a vacation, "If you want to take time off and not work, you better hope you have a job when you get back."

Oishi only made these kinds of statements to Wilgar. Male employees were never threatened when they took time off. Oishi stated to a male employee, in front of the female

employees, including Wilgar, that he should "interrupt the women if they talk too much, as women tend to talk too much, and get off topic." Oishi stated to Wilgar, "I don't like the sound/pitch of your voice, so you need to work on it to change it."

At one mandatory lunchtime staff meeting, Oishi forced all the employees to go around the room and state what they didn't like about one another. Oishi and OPM Las Vegas permitted male employees to routinely violate company policy without consequences. Female employees were not similarly treated and did not receive the same dispensation as the male employees.

OPM Las Vegas had no appropriate policies or procedures in place to deal with Oishi's discriminatory conduct. OPM Las Vegas's employment policy against harassment requires that a complaint of harassment be made to Defendant Jeanne Kaneda ("Kaneda"), senior vice president of OPM Las Vegas and its treasurer. Once a complaint is made, Kaneda is supposed to "thoroughly investigate the matter and take appropriate corrective action to prevent further occurrence."

Kaneda witnessed Oishi's discriminatory conduct on many occasions and was a victim of it herself. Wilgar complained to Kaneda on multiple occasions about Oishi's discriminatory and abusive conduct in compliance OMP Las Vegas's policies and procedures. Kaneda agreed that Oishi is abusive but replied that it was just a part of her employment she would have to get used to.

On January 17, 2019, Oishi berated and belittled Wilgar in front of the entire office because she had not completed a New Year's Resolutions assignment. Oishi's abuse was so bad that Wilgar began to cry and had to leave the room. Oishi threatened Wilgar that if she chose to leave the room—rather than staying and taking his abuse—she should just leave the office for the rest of the day and would be docked time.

Wilgar had no choice but to leave so that she would no longer be degraded and belittled. Wilgar left approximately three hours before the workday was done. In the evening of January 17, 2019, Wilgar sent a written complaint to Oishi in the form of an email putting him on notice of her objection to the hostile work environment he had created and requesting that something be done by OPM Las Vegas to deal with it.

Wilgar copied Kaneda pursuant to the policies and procedures. Wilgar's email was only addressed to Oishi and Kaneda. However, Oishi sent a responsive email that was copied to every employee of OPM Las Vegas in an effort to humiliate Wilgar and silence her complaints.

Kaneda, who is tasked with completing a thorough investigation of any complaints and taking appropriate action to correct any matters and to prevent further occurrences—as per OPM Las Vegas's written policies—did not respond to Wilgar's January 17 email. Kaneda did not institute an investigation and took no corrective action whatsoever.

Oishi's written response did not adequately address Wilgar's complaints, did not assure that an investigation into her concerns would be forthcoming, and did not implement any changes moving forward to deal with the hostile work environment at OPM Las Vegas.

On January 28, 2019, Oishi was engaged in a conference call with Kaneda and another employee to discuss payroll. The conference call was on a speaker phone so that the entire OPM Las Vegas office could hear the discussion.

Oishi asked Kaneda to go to Wilgar and find out how she wanted to be docked for leaving early on January 17, 2019, i.e., did she want to use sick time or vacation time. Wilgar replied that it was not appropriate to dock her for a half-day when she left because of Oishi's conduct.

Additionally, she was not gone for half of the day, so Oishi's order that she be docked for missing half of the day was improper. Wilgar then went over to where Ms. Kaneda and Ms. Oishi

were speaking on the phone with Oishi and registered her objection to the pay docking and further registered her objection to Oishi's mischaracterization of why and how she had left the day before.

Wilgar became emotional and upset. Oishi told Wilgar that they should just part ways. Recognizing that Oishi was trying to terminate Wilgar without want to say so, Wilgar asked that if she was being fired that Oishi say so and put the reasons for termination in writing. Oishi had Kaneda and another employee draft a termination letter for his signature.

Wilgar was terminated on or about January 28, 2019. The reasons given for the termination were "failure to complete an assigned task and a poor attitude from the meeting on January 17, 2019" and "interruption of Jeanne's phone call with me and continuing to yell over the phone when asked to stop on January 28, 2019."

Wilgar filed a charge with the EEOC. A notice of right to sue was issued by the EEOC on or about February 26, 2019 and Wilgar received it in the mail approximately 3 days later. On May 16, 2019, Kaneda filed a complaint against Wilgar with the State of Nevada, Department of Business and Industry, Real Estate Division (RED). The complaint was as follows:

1. During our meeting on April 10, 2019, with our Attorney Mr. Matthew Dushoff, Esq., regarding a demand letter to Mr. Oishi from our former employee, Shana Wilgar, we were asked if she had any financial burden that may have prompted the demand.
2. I felt maybe this was the case as Shana had ask [sic] numerous times to withdraw her 401k and after she purchased a new home at 4125 Cackling Goose Dr., North Las Vegas, NV 89084-2659. I pulled the attached MLS for that property which [lists the broker's office] as Oishi's Property Management.
3. I was not involved with this purchase in any way. I was told by Shana that she was buying this property through her mom, Barbara Brown, who is a realtor at Realty One. Mr. Oishi had no knowledge of this purchase until after it was completed. Because Oishi's was never involved, we were not presented with any documents to review or sign. As such, this is to inform you that we have no documentation regarding this transaction.

The allegations in the complaint were not true—OPM Las Vegas was the broker, and there were documents bearing Oishi's signature verifying the arrangement.

Plaintiff is now bringing claims against Defendants for unlawful wage practices, violations of NRS 6.190, 29 C.F.R. § 541.602, sex discrimination against NRS 608, negligent hiring, training and supervision, intentional infliction of emotional distress, abuse of process and declaratory judgment.

### IV. LEGAL STANDARD

#### a. Motion to Dismiss

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Services, Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences

from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

A party may also move to dismiss a case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Fed. R. Civ. P (12)(b)(1). When considering a motion to dismiss for lack of subject matter jurisdiction, the Court continues to assume all facts alleged by the plaintiff are true. DaVinci Aircraft, Inc. v. United States, 926 F.3d 1117, 1122 (9th Cir. 2019).

## V. DISCUSSION
### a. Motion to Dismiss Pursuant to NRS 41.660

Defendants have filed a motion to dismiss under NRS 41.660. NRS 41.660 is Nevada's Strategic Lawsuit Against Public Participation (anti-SLAPP statute). [1] "Nevada's anti-SLAPP statute aims to protect First Amendment rights by providing defendants with a procedural mechanism to dismiss 'meritless lawsuits that a party initiates primarily to chill a defendant's exercise of his or her First Amendment free speech rights before incurring the costs of litigation.'" Coker v. Sassone, 432 P.3d 746, 748 (Nev. 2019)(internal citations omitted).The law holds that if an action is "brought against a person based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern," the person against whom the suit is brought may file a special motion to dismiss the claims. Nev. Rev. Stat. 41.660 (2).

---

[1] The Ninth Circuit has never explicitly held that Nevada's anti-SLAPP statute may be brought in federal court. Metabolic Research, Inc. v. Ferrell, 693 F.3d 795, 798 n.4 (9th Cir. 2012)(" As neither party raised the issue in this appeal, we do not decide whether the Nevada anti-SLAPP statute is available to litigants proceeding in federal court.") But it has arguably done so in unpublished cases *sub silentio*. See, e.g., Century Surety Co. v. Prince, 782 F.App'x 553 (9th Cir. 2019) (holding that district court applied incorrect legal standard when granting an NRS 41.660 motion to dismiss). As neither party in this lawsuit raises the issue, the Court declines to address it.

When deciding the special motion to dismiss, the Court must first determine whether the moving party has established by a preponderance of the evidence that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern. Nev. Rev. Stat. § 41.660(3)(a).

Once the Court determines that the party moving to dismiss under NRS 41.660 has met that burden, the Court must then determine whether the plaintiff has demonstrated with prima face evidence a probability of prevailing on the claim. Nev. Rev. Stat. § 41.660(3)(a). Finally, the law requires that the Court award reasonable costs and attorney's fees to the moving party under NRS 41.660 if that party prevails. Nev. Rev. Stat. § 41.670.

The Court first considers whether Defendants have met their burden to show that the claim is based upon a good faith communication. NRS 41.637(4) defines "a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern" as "any communication of information or a complaint to a legislator, officer, or employee of . . . this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity. . . which is truthful or is made without knowledge of its falsehood." Nev. Rev. Stat. § 41.637(2).

The Court finds, and neither party disputes, that Defendant Kaneda's complaint filed with the Real Estate Division was a complaint regarding a matter of reasonable concern to the respective governmental entity. However, both parties vociferously dispute whether the complaint was truthful or made without knowledge of its falsehood. No communication may fall under the purview of NRS 41.660 unless it "truthful or is made without knowledge of its falsehood." Shapiro v. Welt, 389 P.3d 262, 268 (Nev. 2017).

Plaintiff argues that Defendant Kaneda's statements are false. To support this claim, Wilgar attaches to her opposition a declaration in which she states that 1) OPM Las Vegas had a policy requiring that Oishi be used as the broker on real estate transactions, 2) that she had many conversations with both Kaneda and Oishi about the purchase of her home, both of whom knew that Oishi was the broker on the home purchase, especially when it was in escrow. She also states that she asked Kaneda if she wanted a copy of the contract, and Kaneda stated that it was fine for Wilgar to keep it.

Wilgar further states that the home was listed under Oishi's multiple listing service (MLS) account and would have shown up under its listings, and that Oishi signed the Commission Order. Wilgar also attaches to her opposition a document titled "First American Title Insurance Company Commission Instructions" (the Commission Order) with Oishi's signature on it. Finally, Wilgar attaches a copy of a document titled "Condition of Employment for Licensed Real Estate Agent," which states that "Wilgar understands and agrees as a condition of employment at Oishi's Property Management (OPM) that . . . [employee] (4) Shall be under the direction of OPM's Real Estate Broker for all real estate transactions and shall not be involved in the sales or management of real estate on their own unless written permission is given in advance." [2]

Defendants respond with declarations from Kaneda and Oishi. Oishi concedes that he signed the document, but that he did not understand what he was signing and was pressured into signing the document by Wilgar. Kaneda argues that at the time that she filed the RED complaint

---

[2] Defendants object very strongly to Wilgar's inclusion of a confidential email sent from defense counsel to plaintiff's counsel in Plaintiff's opposition papers. The Court will not comment on the wisdom of such an inclusion from the vantage point of preserving good faith communications between counsel during settlement. But to the extent that Defendants have evidentiary objections to this inclusion, the Court sustains them. It is unclear whether the Rules of Evidence apply to anti-SLAPP motions, but if they do, Rule 408 of the Federal Rules of Evidence, would surely bar the inclusion of this document, as undoubtedly Wilgar has included it to "disprove the validity of a claim—" specifically Defendants' claim that Wilgar's abuse of process cause of action is subject to dismissal under NRS 41.660. Fed. R. Evid. 408(a). Accordingly, the Court will seal the email from Plaintiff's opposition.

she believed that everything in the complaint was true, that Wilgar never informed her of OPM's involvement in sale, and had Wilgar offered her a copy of any transaction documents, she would have said yes. She further states that the commission instructions signed by Oishi were suspicious, as it was standard practice for her to sign as OPM's broker, not Oishi. She also states that OPM's conditions of employment do not require the use of OPM as a broker.

NRS 41.660 requires the Court to find by a preponderance of the evidence that the anti-SLAPP motion to dismiss is made based upon a good faith communication. Nev. Rev. Stat. § 41.660. "A preponderance of the evidence requires that the evidence lead the fact-finder to conclude that the existence of the contested fact is more probable than its nonexistence." In re M.F., 371 P.3d 995, 1001 (Nev. 2016).

This Court cannot find by a preponderance of the evidence that Defendant Kaneda's statements to the Real Estate Division were made without knowledge as to their falsehood. First, the Court finds that Mr. Oishis's statements as to why he signed the commission are not credible. It defies belief that the president of a real estate corporation would not understand a document related to a real-estate transaction that he was asked to sign at an employee's direction. The Court further finds credible Wilgar's declaration states that she had conversations with both Kaneda and Oishi regarding the real estate transaction and OPM's position as a broker, despite Kaneda and Oishi's protests to the contrary. The Court also finds that Kaneda's statement that the conditions of employment did not require that OPM Las Vegas be listed as a Real Estate broker less credible. The document states that licensed real estate agents "shall be under the direction of OPM's Real Estate Broker for all real estate transactions." Kaneda does not explain in her declaration why this statement does not mean that OPM Las Vegas was the required broker that all licensed real estate agents with the company were supposed to use.

Because the Court cannot find by a preponderance of the evidence that the complaint filed with the Real Estate Division was truthful, Defendants have not met their burden under NRS 41.660, and the Court accordingly dismisses the motion.

**b. Motion to Dismiss Pursuant to Rule (12)(b)(6)**

Defendants also moved to dismiss Plaintiff's abuse of process claim and her request for a declaratory judgment for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court grants this motion in part.

To allege the tort of abuse of process under Nevada law, a party must allege (1) an ulterior purpose by the party abusing the process other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding. Land Baron Inv. v. Bonnie Springs Family LP, 356 P.3d 511, 519 (Nev. 2015).

Defendants argue that dismissal is proper because abuse of process requires that the utilized process be "judicial," and a complaint filed with Nevada's Department of Business and Industry, Real Estate Division (RED) is not judicial but rather an administrative process.

Defendants note that in Land Baron the Nevada Supreme Court agreed with other jurisdictions' holdings that "abuse of process claims do not encompass actions involving administrative agencies," and that "courts are not usually involved in the conduct of administrative agencies." Id. at 520.

Defendants further argue that Wilgar did not adequately plead that the act of filing the complaint was willful. Wilgar argues in opposition that a complaint filed with RED is quasi-judicial because the person against whom the complaint is made is entitled to a hearing, to have counsel present, and may subpoena witnesses. Nev. Rev. Stat. § 645.685; 645.690; 645.700.

The Court finds that the language of the Nevada Supreme Court in <u>Land Baron</u> is sufficiently clear and bars Wilgar's abuse of process claim on the basis of the RED complaint. The Nevada Supreme Court plainly "rejects the assertions that an abuse of process claim may be supported by a complaint to an administrative agency." <u>Land Baron</u>, 356 P.3d at 514. While it is possible that the Nevada Supreme Court may one day entertain the possibility that complaints to a "quasi-judicial" administrative agency can support an abuse of process claim, the language of <u>Land Baron</u> certainly does not entertain such a possibility, and Plaintiff has pointed to no other Nevada caselaw indicating otherwise. Accordingly, the Court dismisses this claim with prejudice, as amendment would be futile.

Plaintiff also seeks a declaratory judgment pursuant to the Nevada Uniform Declaratory Act, codified at NRS 31.010. Nev. Rev. Stat. § 31.010. Upon removal to federal court, any state law claim brought under Nevada's Uniform Declaratory Act must be converted into a claim under the federal Declaratory Judgment Act. 28 U.S.C. § 2201. This is because federal courts sitting in diversity apply state substantive law and federal procedural law, and Nevada's Uniform Declaratory Act is a procedural statute. <u>Krave Entertainment, LLC v. Liberty Mut. Ins. Co.</u>, 667 F.Supp.2d 1232, 1237 (D. Nev. 2009).

The Declaratory Judgment Act provides that "in a case of actual controversy within its jurisdiction," subject to exceptions not applicable here,[3] a court may, upon the filing of an appropriate pleading "declare rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. A district court may decline to exercise jurisdiction over a declaratory action even though subject matter

---

[3]The exceptions are cases involving federal taxes, certain bankruptcy proceedings, and certain trade actions. 28 U.S.C. § 2201(a).

jurisdiction is otherwise proper. Snodgrass v. Provident Life & Accident Ins. Co., 147 F.3d 1163, 1166 (9th Cir. 1998). However, "when other claims are joined with an action for declaratory relief . . . the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998).

Defendants argue that Plaintiff has not adequately pled the elements to procure a declaratory judgment under Nevada state law. However, as previously mentioned, the Court must look at the federal declaratory judgment act, rather than the Nevada equivalent. Each of Plaintiff's claims reincorporate the factual allegations contained therein, and Plaintiff has pled a case of actual controversy concerning whether Defendants violated several state and federal laws. Accordingly, the Court will hear the claim for declaratory relief.

## VI. CONCLUSION

**IT IS ORDERED** that Defendant's Special Motion to Dismiss Pursuant to NRS 41.660 (ECF No. 11) is DENIED.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) (ECF No. 12) is GRANTED in part and DENIED in part. The Court dismiss Plaintiff's abuse of process claim with prejudice as amendment would be futile. The Court shall allow Plaintiff's claim for declaratory relief to proceed.

**IT IS FURTHER ORDERED** that Plaintiff's exhibit 5 to Plaintiff's Opposition to Defendant's Special Motion to Dismiss (ECF No. 15-5) and Opposition to Defendant's Motion to Dismiss Pursuant to 12(b)(6) (ECF No. 14-5) are ordered sealed by the Court.

/ / /

/ / /

**IT IS FURTHER ORDERED** that the parties' Joint Stipulation for Scheduling of an ENE Pursuant to LR 16-6(b) (ECF No. 22) is GRANTED.

**DATED**: March 23, 2020.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**